UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT WINBURN,

          Plaintiff,                  Case No. 2:20-cv-11145

                                    District Judge Mark A. Goldsmith

v.                                 Magistrate Judge Anthony P. Patti

NOAH NAGY,
HEIDI WASHINGTON,
TARON BROWN,
JOHN DOE, and
JANE DOE,

          Defendants.

_____/

## REPORT AND RECOMMENDATION TO GRANT THE MDOC DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM (ECF No. 24)

**I.    RECOMMENDATION:**  The Court should **GRANT** the MDOC Defendants' motion to dismiss (ECF No. 24) to the extent it concerns the operative pleading (ECF No. 1).

**II.    REPORT:**

**A.    The operative pleading is Plaintiff's original complaint.**

Robert Winburn is currently incarcerated at the Michigan Department of Corrections (MDOC) G. Robert Cotton Correctional Facility (JCF), where he is

serving sentence(s) imposed in state court.[1]  On April 7, 2020, while incarcerated at JCF, Winburn filed the instant lawsuit against three named Defendants – (1) Noah Nagy, Warden of JCF; (2) Heidi Washington, the MDOC's Director; and, (3) Officer (Taron) Brown, who is identified as a Corrections Officer at JCF – as well as Jane and John Doe Defendants.  (ECF No. 1, PageID.1-3.)

Plaintiff signed his complaint under penalty of perjury.  (ECF No. 1, PageID.18.)  As this Court has previously described Plaintiff's factual allegations:

> Plaintiff alleges that Defendants Noah Nagy, warden of [J]CF, and Heidi Washington, director of MDOC, have created an environment that places Plaintiff and other similarly-situated prisoners at risk of contracting COVID-19.  He states that a unit for prisoners suffering from COVID-19 is connected to the building in which he is currently housed and health care staff move between the buildings without adequate protection and without precautions to prevent infection of healthy inmates.

> Plaintiff claims that the use of community bathrooms without proper cleaning and disinfecting presents a high risk of exposure to COVID-19.  He alleges that Defendant Brown, a corrections officer, does not allow the use of appropriate disinfectants in the bathroom areas.  Employees are also not properly screened when reporting for work.  Plaintiff alleges that temperature checks of employees when they report for their shifts are a charade because the temperature readings are falsified.  Finally, Plaintiff states that he suffers from "a low-blood platlete [sic] deficiency, and has to use a self-catheter" placing him at increased risk of serious illness or death if he contracts COVID-19.

---

[1] (*See* www.michigan.gov/corrections, "Offender Search," last visited Nov. 18, 2021; Case No. 91-007478-01-FC (Wayne County).)

(ECF No. 6, PageID.75-76 (internal citations to ECF No. 1, PageID.6-10 omitted).)

In sum, Plaintiff's constitutional claims are based upon the Eighth Amendment's

prohibition against cruel and unusual punishment.  (*Id.*, PageID.4.)[2]

---

[2] Plaintiff's complaint also cites the Due Process Clause of the Fourteenth
Amendment.  (ECF No. 1, PageID.4.)  However, "[w]here a particular Amendment
'provides an explicit textual source of constitutional protection' against a particular
sort of government behavior, 'that Amendment, not the more generalized notion of
'substantive due process,' must be the guide for analyzing these claims.'"  *Albright
v. Oliver*, 510 U.S. 266, 273 (1994) (citing *Graham v. Connor*, 490 U.S. 386, 395
(1989).  Additionally, Plaintiff's complaint makes multiple references to Mich.
Comp. Laws § 791.233 ("Grant of parole; conditions; paroles-in-custody; rules.").
(*See*, *e.g.*, ECF No. 1, PageID.5, 7 ¶ 1, 11 ¶ 19.)  The Offender Tracking
Information System (OTIS) reflects that Plaintiff's earliest release date was
September 20, 2014.  *See* www.michigan.gov/corrections, "Offender Search."
Nonetheless, Plaintiff's related claims – that "the detaining agency is violating
[Section] 791.233(2)[,]" or that he "has been twice paroled but unable to be
released because of 'pending charges[,]'" and "the MDOC [is] withholding its
power to release Plaintiff to [the] Washtenaw County Sheriff's [custody][,]" (*id*,
PageID.7 ¶ 1), or that "keeping a prisoner detained who is deemed eligible for
parole, and using pending charges as a pretext . . . where authorities hav[e] failed
to request[] Plaintiff's [release] to their own custody[,]" – even if allegedly
deliberately indifferent, seem out of place in this lawsuit and are perhaps more
appropriately addressed by way of a state court habeas corpus inquiry.  *See*, *e.g.*,
MI R Spec P MCR 3.303 ("Habeas Corpus to Inquire into Cause of Detention"),
*Zagorodnyy v. Barrett*, No. 4:16-CV-10178, 2016 WL 2866415, at *3 (E.D. Mich.
May 17, 2016) (Berg, J.) ("Because petitioner alleges that the Parole Board used
his nationality or ethnic heritage to deny him parole, it is possible that he could file
a petition for writ of habeas corpus in the state courts to challenge the Parole
Board's decision.").  That a state court habeas inquiry may be appropriate is
buttressed by Plaintiff's reference to *Basank v. Decker*, 449 F.Supp.3d 205
(S.D.N.Y. Mar. 26, 2020) (petition for a writ of habeas corpus under 28 U.S.C. §
2241), a copy of which is attached to his complaint.  (ECF No. 1, PageID.2, 21-
26.)

Plaintiff is proceeding *in forma pauperis*.  (ECF Nos. 2 & 5.)[3]  On June 11, 2020, Judge Goldsmith entered an order of partial dismissal, which "dismisse[d] Plaintiff's claims raised on behalf of others similarly situated[,]" but permitted Plaintiff's individual claims to proceed.  (ECF No. 6.)  Shortly thereafter, the Court stayed the case and referred it to the *Pro Se* Prisoner Early Mediation Program. (ECF No. 8.)  Approximately ten months later, on April 27, 2021, the Court excluded this case from the *Pro Se* Prisoner Early Mediation Program and lifted the stay, because Plaintiff "failed to submit the necessary mediation documents." (ECF No. 17.)  As will be apparent below, it appears that Plaintiff is no longer prosecuting this case; he may even have intentionally abandoned it.  Either way, he appears to have lost interest in it.

## B.    Plaintiff did not file an amended complaint.

---

[3] Although this Court has revoked Winburn's *in forma pauperis* status in a prior proceeding, *see Winburn v. Price*, No. 18-12807, 2019 WL 4164760 (E.D. Mich. Sept. 3, 2019) (Ludington, J.), *appeal dismissed sub nom. Winburn v. H. Price*, No. 19-2149, 2020 WL 5959559 (6th Cir. Sept. 10, 2020), Plaintiff's instant complaint alleges that he meets 28 U.S.C. § 1915(g)'s "under imminent danger of serious physical injury" exception.  (ECF No. 1, PageID.12, 16, 19.)  *See, e.g., Vandiver v. Vasbinder*, 416 F. App'x 560, 563 (6th Cir. 2011) ("he sufficiently *alleged* [imminent danger], and that is all that is required by § 1915(g)."); *Vandiver v. Prison Health Servs., Inc.*, 727 F.3d 580, 589 (6th Cir. 2013) (Plaintiff's allegations were "sufficient for him to proceed IFP pursuant to the imminent-danger exception[.]").

Meanwhile, on June 2, 2020, Plaintiff filed a motion to amend/supplement his complaint (ECF No. 7, PageID.79), attached to which is a proposed amended/supplemental complaint (*id.*, PageID.80-91), although the motion was not docketed until June 12, 2020 – the day after the Court's order of partial dismissal. Then, on July 1, 2020, Plaintiff filed a motion to file a second amended/supplemental complaint (ECF No. 10, PageID.99-100), attached to which is a – presumably proposed – "second amended/supplemental complaint" (*id.*, PageID.101-105), although the motion was not docketed until July 10, 2020.

On December 30, 2020, Judge Goldsmith entered an order granting Plaintiff's motions and providing him "leave to file an amended complaint on or before January 25, 2021." (ECF No. 13.) To date, Plaintiff has not done so.

**C.    Plaintiff has not filed a response to the MDOC Defendants' pending motion to dismiss.**

Judge Goldsmith has referred this case to me for pretrial matters. (ECF No. 23.) Currently before the Court is the MDOC Defendants' July 12, 2021 motion to dismiss. (ECF No. 24.) The Court issued an order(s), which required Plaintiff to file a response on or before August 16, 2021. (ECF Nos. 25, 26.) To date, Plaintiff has not filed a response. Thus, the MDOC Defendants' motion is, technically, unopposed. *See* E.D. Mich. LR 7.1(c)(1) ("A respondent opposing a

5

motion must file a response, including a brief and supporting documents then available.").

"Numerous cases have held that where a plaintiff fails to respond to a motion to dismiss, his or her claims are deemed abandoned." *Tranchmontagne v. United States Dep't of Hous. & Urb. Dev.*, No. 20-CV-12842, 2021 WL 2662283, at *6 (E.D. Mich. June 29, 2021) (Borman, J.) (referencing cases). *See also Williams v. Chase Bank*, No. 15-10565, 2015 WL 4600067, at *4 (E.D. Mich. July 29, 2015) (Lawson, J., *adopting report and recommendation of* Whalen, M.J.). However, "particularly where *pro se* litigants are concerned," district courts "must, at a minimum, examine the 12(b)(6) motion to dismiss prior to dismissing a complaint." *Visner v. Michigan State Police*, No. 19-11466, 2020 WL 525367, at *1 (E.D. Mich. Feb. 3, 2020) (Levy, J.) (citing *Carver v. Bunch*, 946 F.2d 451, 455 (6th Cir. 1991)). In *Carver*, the Sixth Circuit instructed:

> . . . a district court cannot grant summary judgment in favor of a movant simply because the adverse party has not responded. The court is required, at a minimum, to examine the movant's motion for summary judgment to ensure that he has discharged that burden. We see no reason why the situation should be different in the context of a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6).

*Carver*, 946 F.2d at 455.[4]  Accordingly, notwithstanding Plaintiff having "waived

opposition to the Defendants' motions to dismiss[,]" the Court "has undertaken an

independent review of the motion[] to dismiss and the sufficiency of Plaintiff's

complaint[.]"  *Tranchmontagne*, 2021 WL 2662283, at \*7.

> **D.  The Court should grant the MDOC Defendants' motion to dismiss.**
>
> > **1.  Plaintiff's official capacity claims for monetary damages are barred by the Eleventh Amendment.**

Plaintiff sues Defendants Nagy, Washington, and Brown in their individual

and/or official capacities.  (ECF No. 1, PageID.2-3.)  He seeks injunctive and

declaratory relief, as well as punitive and/or compensatory relief.  (*Id*., PageID.5,

12.)  However, as the MDOC Defendants correctly argue, they are entitled to

sovereign immunity as to Plaintiff's claims against them in their official capacities

for monetary damages.  (ECF No. 24, PageID.151-152.)

Plaintiff's claims against Defendants in their official capacities are claims

against the State of Michigan, and "the Eleventh Amendment bars a damages

action against a State in federal court."  *Kentucky v. Graham*, 473 U.S. 159, 169

(1985).  Put another way, "[t]his bar remains in effect when State officials are sued

---

[4] *But see Humphrey v. U.S. Att'y Gen.'s Off.*, 279 F. App'x 328, 331 (6th Cir. 2008) ("where, as here, plaintiff has not raised arguments in the district court by virtue of his failure to oppose defendants' motions to dismiss, the arguments have been waived.").

for damages in their official capacity." *Id.* at 169 (internal citation omitted).  Thus, the Eleventh Amendment is a bar to Plaintiff's claims for money damages against Defendants in their official capacities, and such § 1983 claims should be dismissed.

However, "the sovereign-immunity doctrine does not bar [Plaintiff]'s suit against [Defendants] in [their] individual capacity[ies], or against [Defendants] in [their] official capacity[ies] with respect to declaratory and injunctive relief[.]" *Pucci v. Nineteenth Dist. Ct.*, 628 F.3d 752, 765 (6th Cir. 2010) (internal citations omitted).  Accordingly, the Court will consider the viability of such claims.

### 2.      Plaintiff's individual capacity claims do not adequately allege "the personal involvement of any MDOC Defendant in a constitutional violation."

"Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).  "Bare assertions of legal liability absent some corresponding facts are insufficient to state a claim." *Agema v. City of Allegan*, 826 F.3d 326, 331 (6th Cir. 2016) (citing *Ashcroft*, 556 U.S. at 678).  Moreover, this Court "need not accept as true any 'conclusory legal allegations that do not include specific facts necessary to establish the cause of action.'" *Bickerstaff v. Lucarelli*, 830 F.3d 388, 396 (6th Cir. 2016) (citing *New Albany Tractor, Inc. v. Louisville Tractor,*

8

*Inc.,* 650 F.3d 1046, 1050 (6th Cir. 2011)).  "The plaintiff's complaint instead

'must contain either direct or inferential allegations with respect to all material

elements necessary to sustain a recovery under some viable legal theory.'"

*Bickerstaff*, 830 F.3d at 396 (citing *Weisbarth v. Geauga Park Dist.*, 499 F.3d 538,

541 (6th Cir. 2007) (citation and internal quotation marks omitted)).

### a.    MDOC Director Washington and JCF Warden Nagy

### i.    Individual action

To a certain extent, Plaintiff's complaint "impermissibly lumps the actions

of all Defendants together into one amorphous group."  (ECF No. 24, PageID.152.)

*Reilly v. Vadlamudi*, 680 F.3d 617, 626 (6th Cir. 2012) ("Plaintiff must state a

plausible constitutional violation against each individual defendant—the collective

acts of defendants cannot be ascribed to each individual defendant."); *Courser v.

Michigan House of Representatives*, 404 F. Supp. 3d 1125, 1140 (W.D. Mich.

2019) ("'[a] complaint which lumps all defendants together and does not

sufficiently allege who did what to whom, fails to state a claim for relief because it

does not provide fair notice of the grounds for the claims made against a particular

defendant.'") (quoting *Tatone v. SunTrust Mortg., Inc.*, 857 F. Supp. 2d 821, 831

(D. Minn. 2012)).  For example, at the outset of his complaint, Plaintiff identifies

Defendant Nagy as JCF's Warden and Defendant Washington as the MDOC's

Director, after which he summarizes that "*[t]hey* have created a policy, practice,

9

and custom which exposes [him] to imminent potential injury[,]" and that "*[t]hey* . . . are flagrantly indifferent to our rights."  (ECF No. 1, PageID.2-3, 5 (emphases added).)  Also, within the description of his injuries, Plaintiff alleges that he and others are at "risk[] of death as a result of *Defendants[']* inactions or more aptly actions."  (ECF No. 1, PageID.12 (emphasis added).)

### ii.     Eighth Amendment deliberate indifference

More importantly, the allegations against Defendants Nagy and Washington which appear within Plaintiff's six-page "Statement of Claim" (ECF No. 1, PageID.6-11) are not sufficiently specific for purposes of alleging an Eighth Amendment claim of deliberate indifference to a substantial risk of serious harm to a prisoner.  *Farmer v. Brennan*, 511 U.S. 825, 828, 114 S. Ct. 1970, 1974, 128 L. Ed. 2d 811 (1994) ("A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment.").

First, Plaintiff's answers to the questions about location are telling.  (ECF No. 1, PageID.6 ¶¶ A & B.)  The form asks, "[i]f the events giving rise to your claim arose *outside an institution*, describe where and when they arose."  (*Id.*, ¶ A (emphasis added).)  In response, Plaintiff contends that Defendant Nagy opened "K-Unit" – "a building connected to JCF as an official state-sponsored containment unit for housing [C]ovid-19 'positive' prisoners" – on or about March 27, 2020 with Defendant Washington's "approval, authorization, and assistance . . .

10

."  (*Id.*; *see also id.*, PageID.10 ¶ 11.)  Yet, Plaintiff also claims this decision "was

made *outside the prison* with the officials responsible for protecting the health and

safety of prisoners and staff alike."  (*Id.* (emphasis added).)  The form then asks,

"[i]f the events giving rise to your claim arose *in an institution*, describe where and

when they arose."  (*Id.*, ¶ B (emphasis added).)  Plaintiff provided a response,

which alleges that "the employ[ment] of a containment unit at JCF" means

prisoners "face imminent danger."  (*Id.*, (underline omitted).)  These location

answers are conclusory as to Defendant Washington  and, if actually made "outside

the prison," suggest that Defendant Nagy, as JCF's Warden, had little decision-

making responsibility with respect to installing a COVID-19 unit at JCF.

Moreover, a conclusion that Warden Nagy had little involvement with the decision

to place a COVID-19 unit at JCF is buttressed by the exhaustion portion of

Plaintiff's form complaint, where Plaintiff explains that he:  (a) did not grieve non-

grievable issues, such as "the Director's [Defendant Washington's] decision to put

a Covid-19 unit at [JCF][;]" and, (b) brought it to the JCF block representatives'

attention, but "the Warden [Defendant Nagy] state[d] it is at the discretion of

Lansing."  (ECF No. 1, PageID.14-15; *see also* ECF No. 1, PageID.10 ¶ 15.)

Second, when asked, "[w]hat are the facts underlying your claim(s)[,]"

Plaintiff responded with several numbered paragraphs in which the references to

Defendants are few.  (ECF No. 1, PageID.7-11 ¶ D(1)-D(19).)  True, Plaintiff's

11

description of the conditions of his confinement at JCF (not to mention his own alleged physical vulnerabilities) (*see* ECF No. 1, PageID.7-9 ¶¶ 2, 7, 8) and COVID-19's known transmissibility possibly satisfy the *objective component* of an Eighth Amendment deliberate indifference claim. *Wilson v. Williams*, 961 F.3d 829, 840 (6th Cir. 2020) ("The COVID-19 virus creates a substantial risk of serious harm leading to pneumonia, respiratory failure, or death.").

Nonetheless, Eighth Amendment deliberate indifference claims also have a *subjective component*, *i.e.*, that Defendant(s) knew of and disregarded "'an excessive risk to inmate health or safety.'" *Wilson*, 961 F.3d at 841(quoting *Farmer*, 511 U.S. at 837). *See also Brawner v. Scott Cty., Tennessee*, No. 19-5623, 2021 WL 4304754, at *3 (6th Cir. Sept. 22, 2021). Plaintiff expressly mentions Defendants Washington and Nagy as follows:

- "[S]ocial distancing cannot be followed as ordered by the CDC[,]" yet, Defendants Nagy and Washington "have opened a shuttered unit . . . [,]" which is connected to JCF. (ECF No. 1, PageID.7 ¶ 3.)

- "Defendants have administered a cost[-]saving policy of having the Health Unit Manager . . . serve both populations . . . [,]" allegedly without protective gear. (*Id.*, ¶ 4.) (*See also id.*, PageID.11 ¶ 17.)

- "Defendants Nagy and Washington know of the highly contagious nature of Covid-19, or should know, and the decision to utilize a single <u>HUM and her staff</u> to service both K-unit prisoners and general population prisoners is deliberate

12

indifference" and "presents a clear and present danger of risk of exposure." (*Id.*, PageID.9 ¶ 9.)

- There is "discontent induced by Warden Nagy for installing a containment unit at [JCF] for [C]ovid-19 positive prisoners from other facilities[.]" (*Id.*, PageID.9-10 ¶ 11.)

- Citing Mich. Admin. Code R 791.718 ("Inmate rights."), MDOC PD 03.03.130 ("Humane Treatment and Living Conditions for Prisoners"), and the Eighth Amendment, Plaintiff claims that Defendants Nagy and Washington "have a duty to protect [prisoners] and not place [them] in harm[,]" and "the decision to put an infected population with an uninfected population served by one HUM is absolutely deliberate indifference." (*Id.*, PageID.11 ¶ 18.)

However, these allegations, namely that Defendants Washington and Nagy opened a COVID-19 unit at JCF and use one HUM – allegedly without protective gear – to serve both healthy and infected prisoners in an effort to save money, , do not describe their individual acts or involvement. Even if Defendants Washington and Nagy are the decision makers in the placement and implementation of a COVID-19 unit at JCF as alleged above, these paragraphs do not adequately allege the subjective component. True, Plaintiff claims that "[t]he nature of prisons makes exposure and spread of the virus particularly harmful[,]" while also mentioning its "deadly nature" and "imminent" exposure risk. (ECF No. 1, PageID.8-10 ¶¶ 4-7, 16.)[5] He also claims that the MDOC is "not utilizing its 'emergency release'

---

[5] Plaintiff supports these allegations with various cases, such as *United States v. Doshi*, Case No. 2:13-cr-20349-AJT-LJM, 2020 WL 1527186 (E.D. Mich. Mar.

powers in time of emergency," as permitted by Mich. Admin. Code R 791.716

("Emergency release of inmates."). (ECF No. 1, PageID.9 ¶ 8.) However, even if

Defendants Washington and Nagy knew or should have known of COVID-19's

"highly contagious nature," (ECF No. 1, PageID.9 ¶ 9), it does not necessarily

mean they *disregarded* "'an excessive risk to inmate health or safety.'" *Wilson*,

961 F.3d at 841(quoting *Farmer*, 511 U.S. at 837). Rather than resembling that

Defendants were "aware of facts from which the inference could be drawn that a

substantial risk of serious harm exists," and "dr[e]w the inference[,]" – or even

"recklessness" – Plaintiff's allegations about having one HUM serve both

populations more closely resemble negligence. *Farmer,* 511 U.S. at 835-837

("deliberate indifference describes a state of mind more blameworthy than

negligence.").

---

31, 2020) (Tarnow, J.) (order granting a motion for a judicial recommendation to
home confinement); and *Pittman v. Kolb*, Case No. 5:07-cv-14892-JCO-CEB,
2009 U.S. Dist. LEXIS 115870 (E.D. Mich. Sept. 24, 2009) (report and
recommendation of Binder, M.J.) ("exposure to serious communicable diseases,
including MRSA, *may* form the basis of a deliberate indifference claim under the
Eighth Amendment where there is an '*unacceptable risk* of serious damage to [the
prisoner's] future health.'") (emphasis added) (citing *Helling v. McKinney*, 509
U.S. 25, 33 (1993), *report and recommendation adopted Pittman v. Kolb*, No. 07-
14892, 2009 WL 4885005 (E.D. Mich. Dec. 11, 2009) (O'Meara, J.)). *See also
Helling*, 509 U.S. at 35 ("McKinney states a cause of action under the Eighth
Amendment by alleging that petitioners have, with deliberate indifference, exposed
him to levels of ETS that pose an *unreasonable risk* of serious damage to his future
health.") (emphasis added). ₁

"[C]ourts may no longer accept conclusory legal allegations that do not include specific facts necessary to establish the cause of action." *New Albany Tractor, Inc.*, 650 F.3d at 1050 (referencing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 569-570 (2007)).  Here, Plaintiff's allegations are not sufficiently specific with respect to disregard, *i.e.*, the subjective component of Plaintiff's Eighth Amendment claim.

### b.    JCF Corrections Officer Brown

Plaintiff claims that, "[t]o compound the risk of exposure," JCF Corrections Officer Brown and "supervisory officials" have "sustained the policy, practice and custom of disallowing 'disinfectants' in community bathrooms[,]" because "there is no requirement for having them."  (ECF No. 1, PageID.9 ¶ 10.)  (*See also id.*, PageID.11 ¶ 17.)  Seemingly by way of Grievance Identifier JCF-19-2383-03D, Plaintiff pursued through Step 3 his claims pertaining to Defendant Brown "denying access to disinfectant for community bathrooms."  (ECF No. 1, PageID.9 ¶ 10, 13, 15.)

Preliminarily, this Court is not in the business of running prisons or telling prison administrators when to put disinfectants in community bathrooms.  As the Supreme Court has stated:

> Running a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive

> branches of government. Prison administration is, moreover, a task
> that has been committed to the responsibility of those branches, and
> separation of powers concerns counsel a policy of judicial restraint.
> Where a state penal system is involved, federal courts have, as we
> indicated in [*Procunier v.*] *Martinez,* [416 U.S. 396, 405 (1974)][,]
> additional reason to accord deference to the appropriate prison
> authorities.

*Turner v. Safley*, 482 U.S. 78, 84–85 (1987).  "[T]he problems that arise in the day-to-day operation of a corrections facility are not susceptible of easy solutions. Prison administrators therefore should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell v. Wolfish*, 441 U.S. 520, 547 (1979) (citing cases).

More to the point, the Undersigned agrees that Plaintiff's allegations against Defendant Brown are "conclusory."  (ECF No. 24, PageID.154-155.)  For purposes of this motion to dismiss, the Court sets aside Defendants' assertions about "JCF's reasonable COVID-19 response measures"  – *i.e.*, the MDOC's Coronavirus (COVID-19) Response concerning "access to soap" and "extra care going into cleaning prisons and sanitizing cells[,]" (ECF No. 24-5, PageID.311, 314, 316) – and "statistical data" – *i.e.*, "as of the filing of [their motion], there are only 2 COVID-19 positive prisoners at JCF[,]" (ECF No. 24, PageID.150-151 n.2).  (ECF No. 24, PageID.154-155.)

Instead, the Court focuses on the face of the complaint, as it must do on a motion to dismiss.  Plaintiff's claims that Brown "sustained the policy, practice and custom of disallowing 'disinfectants' in community bathrooms[,]" and/or "[found] there is no requirement for having them[,]" and/or "den[ied] access to disinfectant for community bathrooms[,]" lack specificity.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ("we do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face. Because the plaintiffs here have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed.").

### c.      Supervisory officials John and Jane Doe

Plaintiff also contends that "precautionary measures for routine temperature checks of staff . . . are ineffective to protect us."  (ECF No. 1, PageID.9 ¶ 11.)  He alleges that supervisory officials (John and Jane Doe Defendants) are "[altering] the temperature readings used to identify who actually has a fever[,]" *i.e.*, "the detection device is being recalibrated to a lower temperature to thwart identifying those who may be sick[.]"  (*Id.*, PageID.10 ¶¶ 11-12.)

"The law is clear that liability of supervisory personnel must be based on more than merely the right to control employees." *Hays v. Jefferson Cty., Ky.*, 668 F.2d 869, 872 (6th Cir. 1982).  "Section 1983 liability will not be imposed solely upon the basis of respondeat superior.  There must be a showing that the supervisor

17

encouraged the specific incident of misconduct or in some other way directly participated in it." *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). "At a minimum a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *Hays*, 668 F.2d at 874. Recently, the Sixth Circuit stated:

> But supervisory liability also has sharp limits. It will not attach for "a mere failure to act." *Id.* at 241. "[A] supervisor cannot be held liable simply because he or she was charged with overseeing a subordinate who violated the constitutional right of another." *Id.*; *see also Winkler v. Madison County*, 893 F.3d 877, 898 (6th Cir. 2018) ("[L]iability cannot be imposed on a supervisor under § 1983 based on the theory of respondeat superior."). And supervisory liability requires more than negligence or recklessness. *Garza*, 972 F.3d at 866.

*Crawford v. Tilley*, 15 F.4th 752, 761 (6th Cir. 2021). "There also must be a 'causal connection' between the defendant's 'active unconstitutional behavior' and the plaintiff's injuries." *Crawford*, 15 F.4th at 761-762 (citing *Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016).)

Even assuming the temperature check is a "façade," Plaintiff's allegation that "staff at a supervisory level" have an unwritten practice of "skewing temperature results of incoming officers . . . [,]" (*id.*, ¶¶ 12-13), does not "state a plausible constitutional violation against each individual defendant . . . [,]" and, instead, describes "collective acts," which "cannot be ascribed to each individual defendant." *Reilly*, 680 F.3d at 626. The collective character of these allegations

is unchanged by Plaintiff's claim that he "will identify those who are responsible via discovery proceedings, including with a subpoena of the device setting records" from April 2, 2020 to April 5, 2020.  (*Id.*, ¶¶ 13-14.)

> ### 3.    Plaintiff's official capacity claims do not state a claim upon which relief can be granted.

Finally, although Defendants ask this Court to "hold that Plaintiff's complaint and amended complaint fails to state a claim on which relief can be granted . . . [,]" (ECF No. 24, pageID.136 ¶ 12), their motion to dismiss does not expressly address Plaintiff's official capacity claims for injunctive and declaratory relief, which are not barred by the Eleventh Amendment.  "To establish liability in an official capacity suit under section 1983[,] a Plaintiff must show either that the official named in the suit took an action pursuant to an unconstitutional governmental policy or custom, or that the official possessed final authority over the subject matter at issue and used that authority in an unconstitutional manner." *Lupo v. Voinovich*, 235 F. Supp. 2d 782, 791 (S.D. Ohio 2002) (citing *Nix v. Norman,* 879 F.2d 429, 433 (8th Cir.1989)).

Plaintiff's requests for injunctive and declaratory relief, as well as punitive and/or compensatory relief, seem to be based on:  (a) an alleged "policy, practice, and custom which exposes [him] to imminent potential injury[;]" (b) his request to be "release[ed] . . . on his own recognizance subject to reasonable and appropriate

conditions[;]" (c) "restraining Defendants in their official capacity . . . [;]" and, (d) "a declaratory judgment that said actions violate the Eighth Amendment."  (ECF No. 1, PageID.5, 12.)[6]  However, having already concluded that Plaintiff failed to adequately allege personal involvement in a constitutional violation by any MDOC Defendant (ECF No. 1, PageID.7-11 ¶¶ 1-19), it follows that Plaintiff does not allege that any of these Defendants "took an action pursuant to an unconstitutional governmental policy or custom" or "possessed final authority over the subject matter at issue and used that authority in an unconstitutional manner."  *Lupo,* 235 F. Supp. 2d at 791.

### E.    Conclusion

If the Court agrees that Plaintiff's individual capacity claims do not adequately allege "the personal involvement of any MDOC Defendant in a constitutional violation[,]" (ECF No. 24, PageID.152-155), then the Court need not address Defendants' argument that "Plaintiff's Eighth Amendment claims cannot survive because the MDOC officials at JCF reasonably responded to COVID-19[,]" (ECF No. 24, PageID.155-159), or Defendants' argument that they "are entitled to qualified immunity[,]" (*id*., PageID.159-163).  In other words, the Court need not consider the reasonableness of Defendants' response to COVID-19 or

---

[6] Elsewhere, Plaintiff "seeks immediate protective measures to stop the community spread into the housing unit and dormitory settings."  (ECF No. 1, PageID.8 ¶ 7.)

Defendants' entitlement to qualified immunity if Plaintiff has failed to adequately allege a constitutional violation by any of the Defendants.  Also, the Court need not address the MDOC Defendants' final argument – *i.e.*, Plaintiff's "First Amendment claim must be dismissed for failure to state a claim[,]" (ECF No. 24, PageID.163-167) – because it is based on Plaintiff's proposed amended complaint (ECF No. 10), which is not the operative pleading.

As detailed above, Plaintiff did not respond to the Court's invitation to file an amended complaint.  Nor did he respond to Defendants' motion to dismiss.  In fact, it is noteworthy that Plaintiff has not filed anything in this case since his July 1, 2020 motion to amend (ECF No. 10), *i.e.*, more than 500 days ago.  In sum, under the guidance of *Carver* and *Visner*, the Undersigned has examined Defendants' motion to dismiss (ECF No. 24) and concludes that Defendants have discharged their burden.  Because Plaintiff's operative pleading fails to sufficiently allege Defendants' personal involvement, coupled with Plaintiff's failure to respond to the motion to dismiss and the distinct possibility that he has abandoned this case or lost interest in it, the Court should **GRANT** the MDOC Defendants' motion to dismiss (ECF No. 24) to the extent it concerns the original complaint (ECF No. 1), which is the operative pleading in this case.

## III.   PROCEDURE ON OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.*  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to

22

Objection No. 2," *etc.*  If the Court determines that any objections are without

merit, it may rule without awaiting the response.


Dated: November 19, 2021

_____
Anthony P. Patti
UNITED STATES MAGISTRATE JUDGE